IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Criminal Action No. **3:12-CR-054-L** |
| | § | |
| **JACQUES ROY, et al.,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is the Motion to Have Case Declared Complex and for a Continuance of the Trial Date ("motion"), filed by the United States of America (the "government") on March 12, 2012. On April 19, 2012, the court held a hearing on the motion. Defendant Teri Sivils' Objection to the United States' Motion to Declare the Case Complex was filed on March 15, 2012. Defendants Jacques Roy and Cynthia Stiger filed responses to the government's motion on March 16, 2012, stating they are not opposed to the granting of the government's motion. At the time of the hearing, Teri Sivils was the only defendant who expressed any opposition to the government's motion. Having reviewed the motion, responses, objection, record, and applicable authorities and considered the arguments and evidence presented at the hearing, the court **grants** the United States's Motion to Have Case Declared Complex and for a Continuance of the Trial Date.

### I. Factual and Procedural Background

On February 23, 2012, a sealed Indictment was filed in this case. The Indictment charged all seven defendants in Count One with Conspiracy to Commit Healthcare Fraud, in violation of 18 U.S.C. § 1349. Defendants Jacques Roy (Counts Two through Ten), Wilbert

James Veasey, Jr. (Counts Two through Four), Patricia Akamnonu (Counts Five through Seven), and Charity Eleda (Counts Eight through Ten) are charged with multiple counts of Healthcare Fraud, in violation of 18 U.S.C. §§ 1347 and 2. Defendant Charity Eleda is charged with three additional counts of False Statements for Use in Determining Rights for Benefit and Payment by Medicare, in violation of 42 U.S.C. § 1320a-7b(a)(2). The Indictment also contains a Notice of Criminal Forfeiture, pursuant to 18 U.S.C. § 982(a)(7).

The Indictment alleges that from January 1, 2006, though November 30, 2011, Dr. Jacques Roy, and other physicians operating at his direction, certified numerous beneficiaries for home health services that were not medically necessary, billing Medicare for over $350 million and Medicaid for over $24 million for these beneficiaries. A patient qualified for home healthcare benefits only if, *inter alia*, the patient was under the care of a physician who specifically determined there was a need for home healthcare and established the Plan of Care ("POC"). The Indictment alleges that Defendants Cynthia Stiger and Wilbert James Veasey, Jr. were the owners of a home healthcare agency ("HHA"), whose patients were certified for home healthcare services by Dr. Jacques Roy or a related physician, and submitted fraudulent claims to Medicare for home health services that were not medically necessary. According to the Indictment, Defendants Cyprian Akamnonu and Patricia Akamnonu were the owners of Ultimate Care Home Health Services, Inc. whose patients were also certified for home healthcare services by Dr. Jacques Roy or a related physician, and submitted fraudulent claims to Medicare for home health services that were not medically necessary. The Indictment alleges that Defendant Teri Sivils signed Dr. Roy's name to POCs and supervised the processing of thousands of POCs that contained Dr. Roy's electronic signature, permitting HHA's to bill Medicare for unnecessary home health services. According to the Indictment, Defendant Charity Eleda also

owned a HHA and submitted fraudulent claims to Medicare for home health services that were not medically necessary.

This case is currently set for trial on May 7, 2012, and pretrial motions were due March 23, 2012. The government moves the court to declare this case complex and requests the court to vacate the date for the trial to a date to be determined at a scheduling conference to take place on or after June 12, 2012. The government represented at the hearing that it initially came to a consensus with defense counsel to vacate the current trial date and reconvene in 90 days to discuss and set a new trial date, but since that time, defense counsel has indicated that they would need a continuance of at least 180 days to prepare for trial.

## II. Legal Standard

The Speedy Trial Act (the "Act"), 18 U.S.C. §§ 3161-3174, requires that a defendant be brought to trial "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C.S. § 3161(c)(1). Under 18 U.S.C. § 3161(h), however, certain delays are excluded from the calculation of the 70-day limit. Pursuant to 18 U.S.C. § 3161(h)(7)(A), the court can grant an "ends of justice" continuance "at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* One of the factors the court may consider in granting an "ends of justice" continuance is "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate

preparation for pretrial proceedings or for the trial itself within the time limits established by this section." 18 U.S.C. § 3161(h)(7)(B)(ii).

In *United States v. Bieganowski*, 313 F.3d 264, 282 (5th Cir. 2002), the court considered the propriety of three of the district court's orders granting a continuance of the trial date in light of a defendant's (Lopez) argument that the indictment should have been dismissed for undue delay under the Act, and that the eventual delay between his arrest and trial violated his right to a speedy trial under the Sixth Amendment. With respect to the first order at issue, the court observed that "[t]he district court's order not only explicitly referenced subsections 3161(h)(8)(B)(i) and (ii), but also described the case as 'unusual and complex.' Moreover, the order stressed that because of [Defendant Bieganowski's] illness and the high volume of discovery, the continuance was necessary to permit [Defendant Bieganowski] to assist his attorney to prepare for trial." *Bieganowski*, 313 F.3d at 282. The court of appeals found the districts court's designation of the case as complex and the decision to grant a continuance based on the volume of discovery to be consistent with other cases interpreting section 3161(h)(8). *Id.* at 282 n.15. The court took issue with the second order because the record did not reference either the ends of justice or the complexity of the case, but declined, for other reasons, to decide whether it satisfied the requirements of the Act. Regarding the third order, the court observed with approval that the district court found, after "'giving all due consideration to the interest of the public and the defendants to a speedy trial and to the Constitutional rights of the defendants that the ends of justice are served by continuing the action.' In addition, the district court in that same order again entered a finding that the case was complex due to the number of defendants and the nature of the prosecution." *Bieganowski*, 313 F.3d at 282 (ellipses and brackets omitted). Thus, complexity of the case, nature of the prosecution, number of defendants, volume

of discovery, and logistical constraints on a defendant's ability to cooperate in his defense are valid considerations in determining whether to grant an "ends of justice" continuance.

### III. Analysis

The government asserts in its motion and argued at the hearing on this matter that the conduct alleged in the Indictment is complex in its scope and breadth. The government alleges that Dr. Roy and his coconspirators conspired to defraud Medicare and Medicaid by recruiting people who did not require home health services, providing unnecessary medical services to those individuals, and then billing Medicare and Medicaid for those services. The government alleges that his scheme lasted for seven years and occurred between November 2004 through November 2011. The government states that during this time Dr. Roy and his company Medistat Group Associates, P.A. ("Medistat") certified, and purportedly treated, more than 11,000 unique Medicare beneficiaries for home health services provided by over 500 HHAs. Three of these HHAs, "Apple of Your Eye Health Care Services," (owned and operated by Defendants Stiger and Veasey), "Ultimate Care Home Health Services, Inc.," (owned and operated by Defendants Cyprian and Patricia Akamnonu), and "Charry Home Care Services," (owned an operated by Defendant Charity Eleda) would recruit beneficiaries for home health services to be certified by Dr. Roy and Medistat. According to the Indictment, Dr. Roy and Medistat would certify the beneficiaries sent to them by the HHAs, and the HHAs would then provide unnecessary treatment to the beneficiaries and bill Medicare for unnecessary home health services. The government alleges that, in turn, Dr. Roy would bill Medicare for the fraudulent home health certifications and have Medistat employees make unnecessary home visits to the patients, submitting bills to Medicare and Medicaid for such services.

The court agrees that this is a complex case. This case involves a thirteen-count indictment alleging an elaborate scheme to defraud Medicare and Medicaid, and the defendants allegedly billed these agencies for over $374 million. This case involves seven defendants, numerous beneficiaries and home health agencies, and spans seven years. In *Bieganowski*, the court found a similar fraudulent scheme to be complex:

> On August 4, 1998, Diaz, Goldberg, Lopez, Bieganowski, and five others were charged in a twenty-three-count indictment with a series of offenses arising from a complex scheme to use [Healthcare Finance Administration] forms to defraud insurance companies. The essence of the scheme involved a conspiracy to submit bills for services that were either never performed, were known to be unneeded, or contained []codes that reflected a higher level of service than was actually provided.

*Bieganowski*, 313 F.3d at 269; *see also United States v. Haney,* 2009 WL 3363821 (N.D. Tex. Oct. 19, 2009) (declaring the case complex where nine defendants were indicted for the offense of conspiracy to exceed authorized access to a protected computer, in violation of 18 U.S.C. § 1030(b), where the conspiracy lasted six years and involved a loss calculated at approximately $12 million).

Further, the government anticipates that its case-in-chief will last approximately 15 days, excluding cross-examination. The government maintains that the current discovery is voluminous, involving electronic evidence (including computers seized from Medistat, Apple, Ultimate, and Charry) comprising approximately 12 terabytes of data; approximately 831 banker boxes of documents seized by the government in the execution of search warrants; bank records for all companies; Medicare or Medicaid claims data for each company; over 300 witness interviews conducted during the course of the investigation; and several audiotape recordings.[*] The government concedes that some of the information is duplicative but states that there is still

---

[*] It is unclear to the court whether the bank records, claims data, and witness interviews are included in the physical documents or electronic evidence.

a tremendous amount of evidence. At the hearing, the government submitted two exhibits. Exhibit 1 is a discovery receipt acknowledgment for the government's first production of discovery. Exhibit 2 is a discovery receipt acknowledgment for the government's second production of discovery. The government represented to the court that all defense counsel have received the discovery listed in both exhibits. The exhibits list 7 CDs and 36 DVDs containing evidence relating to this case, including in excess of 200 witness interviews. The court determines that the evidence in this case is voluminous, which supports a finding that this case is complex.

Defendant Teri Sivils's opposition focuses on the alleged lack of complexity as to her individually. Complexity, however, "is measured in terms of *the case,* not according to an individual defendant." *Haney,* 2009 WL 3363821, at *2. In other words, Defendant Sivils's conduct, if true, does not exist in a vacuum, especially on a charge alleging conspiracy. The government contends that she was an integral part of Count One and stated that she was the "go to" person. Given the nature of the charges and alleged role of Defendant Sivils, the court cannot conclude that her conduct is so isolated that it is separate and apart from that of the other alleged coconspirators.

Defendant Teri Sivils also argued that the government's request to have this case declared complex violates her Sixth Amendment right to a speedy trial. "The Sixth Amendment guarantees that in all criminal prosecutions, the accused shall enjoy the right to a speedy trial." *Bieganowski*, 313 F.3d at 284 (internal quotations marks, ellipsis, and citation omitted). "It will be the unusual case, however, where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." *Id.* at 284. "In analyzing a Sixth Amendment speedy trial claim, [courts] balance, among other

relevant circumstances, (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant timely asserted [her] right; and (4) any prejudice resulting to the defendant because of the delay." *Bieganowski*, 313 F.3d at 284 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). In *Bieganowski*, in assessing the reasons for delay, the court noted that "pretrial delay is often both inevitable and wholly justifiable." *Bieganowski*, 313 F.3d at 284 (quoting *Doggett v. United States*, 505 U.S. 647, 656 (1992)). "The extent to which this observation rings true will necessarily vary with the complexity of the case. Thus, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Bieganowski*, 313 F.3d at 284 (quoting *Wingo*, 407 U.S. at 530-31) (internal quotation marks omitted). The court observed that the *Bieganowski* conspiracy case "was a complex case, and [] hesitate[d] to say that the reasons for the delay were unreasonable." *Bieganowski*, 313 F.3d at 284.

Considering the complexity of this case, which involves Conspiracy to Commit Healthcare Fraud and other charges; the number of defendants; and volume of discovery, the court determines that a delay of six months (which the court announces below) is reasonable and justifiable. Moreover, the *Barker* analysis requires the court to examine the degree of prejudice that will attach to Sivils as a result of the delay. During the hearing, counsel for Sivils reiterated several times that Sivils would suffer prejudice as a result of a delay and that her constitutional rights would be violated. Defendant Sivils, however, has not explained or demonstrated exactly what prejudice would result. *See Bieganowski*, 313 F.3d at 285 (finding that the defendant failed to make a convincing show of prejudice where he argued that he suffered psychological and economic prejudice, and that the government gained additional time for its expert to review certain documents). Conclusory statements do not carry the day. The court determines that

Defendant Sivils has failed to demonstrate prejudice sufficient for the court to find a violation of her Sixth Amendment rights.

Upon consideration of the factors enumerated in 18 U.S.C. § 3161(h)(7)(B)(ii) and the factors reflected in *Bieganowski,* including the number of defendants, nature of the prosecution, and volume of discovery, the court **determines** that the government has established that this case is so complex due to the number of defendants and the nature of the prosecution that it is unreasonable to expect adequate preparation of the trial itself within the time limits established by the Act. The court therefore **finds** that the ends of justice served by continuing this action outweigh the best interest of the public and the defendants in a speedy trial. Accordingly, the court **grants** the United States's Motion to Have Case Declared Complex and for a Continuance of the Trial Date. Therefore, any period of delay resulting from this court's granting the motion for continuance shall be excluded in computing the time within which the trial of this case must commence under 18 U.S.C. § 3161. The court **continues** the trial of this case to **Monday, November 5, 2012.** The court will issue by separate order an amended scheduling order.

**It is so ordered** this 25th day of April, 2012.

                                                                                                    _Sam A. Lindsay_
                                                                                                    Sam A. Lindsay
                                                                                                    United States District Judge